IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 19, 2014 Session

**DEBORAH MASON HAWKINS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF WAYNE HAWKINS, DECEASED**
v.
**RODNEY A. MARTIN, M.D. AND BAPTIST MEMORIAL HOSPITAL**

**Appeal from the Circuit Court of Shelby County**
**No. CT00320410   John R. McCarroll, Jr., Judge**

---

**No. W2013-02102-COA-R3-CV - Filed June 23, 2014**

---

This appeal involves compliance with the statutory requirements for a health care liability action.  The plaintiff filed a health care liability lawsuit.  The attorney for the plaintiff inadvertently failed to provide the defendant health care providers with medical authorizations that complied with T.C.A. § 29-26-121(a)(2)(E).  The defendants filed a motion to dismiss.  The trial court granted the defendants' motion, finding no extraordinary cause to justify noncompliance with the statutory requirement.  The plaintiff filed his first appeal.  The appellate court vacated the trial court's decision and remanded the case for the trial court to consider the totality of the circumstances, including those of the attorney.  After additional discovery on remand, the trial court again held that the plaintiff had not established extraordinary cause for noncompliance with the statutory requirement, and so dismissed the lawsuit.  The plaintiff again appeals.  After a careful review of the record, we find no abuse of the trial court's discretion and affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Darrell J. O'Neal, Memphis, Tennessee, for Plaintiff/Appellant Deborah Mason Hawkins

J. Kimbrough Johnson, Memphis, Tennessee, for Defendant/Appellee Rodney A. Martin, M.D.

Brett A. Hughes and Kannon C. Conway, Memphis, Tennessee, for Defendant/Appellee Baptist Memorial Hospital

# OPINION

## FACTS AND PROCEEDINGS BELOW

This is the second appeal in this case. *See Hawkins v. Martin*, No. W2011-02318-COA-R3-CV, 2012 WL 3007680 (Tenn. Ct. App. July 24, 2012) (involving the failure to provide HIPAA-compliant medical authorizations as required under Tennessee Code Annotated § 29-26-121(a)). The facts pertinent to this appeal are generally undisputed.

Plaintiff/Appellant Deborah Mason Hawkins ("Plaintiff") was married to Wayne Hawkins. After Mr. Hawkins' death, Ms. Hawkins was named as administratrix of his estate. In December 2009, Ms. Hawkins retained attorney Darrell J. O'Neal to file a health care liability claim against her late husband's health care providers.

At the time Ms. Hawkins retained Mr. O'Neal, he was practicing law as a solo practitioner. He also served as a reservist in the Army National Guard. In January 2010, Mr. O'Neal received notice that he was scheduled to undergo military training in February 2010 in preparation for deployment to Iraq. As scheduled, Mr. O'Neal underwent the February 2010 training. At some point after that, Mr. O'Neal learned that he would not be deployed to Iraq, but would instead be deployed to Afghanistan.

Meanwhile, Mr. O'Neal continued preparation for filing Ms. Hawkins' health care liability action. He first consulted with an expert to evaluate the validity of the contemplated lawsuit. After that, on March 9, 2010, Mr. O'Neal's office sent notice of a potential claim to Defendant/Appellees Baptist Memorial Hospital and Rodney A. Martin, M.D. (collectively "Defendants"), among others. The pre-lawsuit notice included all of the information required under Tennessee Code Annotated § 29-26-121(a)(2), except it did not include medical authorization forms that complied with HIPAA,[1] so as to permit the Defendants to obtain relevant medical records.

On June 25, 2010, Mr. O'Neal filed the instant lawsuit on Ms. Hawkins' behalf in the Circuit Court of Shelby County, Tennessee. The complaint alleged that the Defendants' medical malpractice injured the Plaintiff's late husband and caused his death. The complaint stated that the Plaintiff had complied with the requirements of Section 29-26-121. Attached to the complaint was a certificate of good faith, as required by Tennessee Code Annotated § 29-26-122, as well as copies of the pre-suit notice letters mailed to the Defendants in March 2010.

---

[1]HIPAA is an acronym for the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104–191, 110 Stat.1936 (codified throughout Titles 18, 29 and 42 of the United States Code and in 45 C.F.R. § 164) (2013).

In August 2010, the Defendants filed motions to dismiss the Plaintiff's complaint. The motions asserted that the Plaintiff failed to provide the Defendants with HIPAA-compliant medical authorizations as required under Section 29-26-121(a)(2)(E). In response, the Plaintiff argued that, if in fact she failed to strictly comply with the statutory requirement to include a HIPPA-compliant medical authorization form with her initial pre-suit notice letters, she substantially complied with the statutory requirements, and at any rate the Defendants suffered no prejudice.

In the meantime, attorney O'Neal was deployed to Afghanistan for his military service. The trial court found that he was a significant witness and continued the matter until Mr. O'Neal's return from his military service. Eventually, on September 8, 2011, the trial court held an evidentiary hearing at which Mr. O'Neal testified.

In his testimony, Mr. O'Neal first outlined his routine when a client brings him a potential health care liability claim. Normally, Mr. O'Neal explained, he gets two medical authorizations from the client, one to obtain medical records for expert review and another to send to potential defendants if the expert determines that the case is valid.

In this case, Mr. O'Neal said, after he sent the case to an expert for evaluation, his "life took an unusual turn." He testified that, "around January," he received a notice that he was going to be deployed to Iraq. The next month, in February, Mr. O'Neal learned that he would not be deployed to Iraq after all. He explained:

> [I]n January, I got my notice that I was going to be deployed. In February, I got a remission notification. Remission means that the Army came back and said guess what, you don't have to go to Iraq, but we've got another place you might like even better. So they decided they were going to send me to Afghanistan. So once I received – about that time the file actually came back to my office from my expert, and basically my expert tells me that it's a valid case. So what I do is I take – usually what I do, when I receive a case and it's time to start doing work . . . . [I]n this particular case, [] I . . . drafted up the good faith certificate, the notice and the authorization, and I put that in a package, and I sent it off, one to the doctor who was the named defendant, and then I sent one off to Baptist Hospital. . . . So those went off.

Later testimony in the hearing clarified that Mr. O'Neal's legal assistant mailed the documents in question. She was not present to testify.

In the hearing, Mr. O'Neal said he believed that the statutorily required authorization had been included in the package his office sent to the Defendants. He conceded, however, that

while a letter and his legal assistant's affidavit in the package referenced other items that were enclosed, they did not mention enclosure of the HIPAA authorizations. Mr. O'Neal commented that he is normally "meticulous in how I do this . . . I just don't understand how this could be possible but for my miliary situation." He acknowledged that he could not say with certainty that the authorizations were sent because during the relevant time he was going through training and also getting his law firm's "files together so I could actually bring a new lawyer in to . . . maintain my practice while I was being deployed [a]nd . . . summarizing all the files and determining which files could be handled and which files could not."

Mr. O'Neal noted that he had put several of his employment cases in abeyance because, "unfortunately, even as late as March, I still had not found a lawyer to come into my office, and I was still . . . working the files, summarizing the files, and out of the office." He was asked why the medical authorization was not included in the March 2010 package sent to the Defendants:

> Q: So we're clear, you – your position is you thought that it was included. Your only explanation would be that with the– the deployment and what you were doing at the time of your deployment with your firm has to be the explanation for why it was not there?
>
> O'Neal: That's the only – I mean, I had – like I said, I mean, I was trying to summarize all my cases. I was trying to hire a lawyer. I was trying – I was training, which I had no choice in that matter, I was training, and I was out of the office, and I was still trying to oversee the office.

After considering this testimony, the trial court held that the Plaintiff failed to provide the Defendants the required medical authorization with her pre-claim notice letters. It also held that the Plaintiff did not show "extraordinary cause" within the meaning of Section 29-26-121(b) to excuse noncompliance with the requirement. The trial judge implicitly credited Mr. O'Neal's testimony but concluded that the reasons he offered did not amount to extraordinary cause that would excuse the failure to comply. The trial court referenced cases which it interpreted as holding that attorney oversight, no matter the circumstances, could not rise to the level of "extraordinary circumstances" under the statute. Commenting that "my hands . . . are tied," the trial court granted the motion to dismiss the Plaintiff's complaint. The Plaintiff then filed the first appeal.

In the first appeal, this Court held that the trial court erred in interpreting the relevant caselaw to foreclose a finding of extraordinary cause in any case involving attorney inadvertence. The appellate court observed that the term "extraordinary cause" is not defined in the statute. It then stated:

> We have held that mere attorney oversight, unaccompanied by extraordinary circumstances, does not constitute extraordinary cause. We have not held, however, that a trial court does not have the discretion to excuse compliance for attorney oversight caused by unique and extraordinary circumstances. It is the duty of the trial court to weigh the entirety of the circumstances and to determine whether extraordinary cause exists on a case by case basis.

*Hawkins*, 2012 WL 3007680, at \*6. Thus, the appellate court held that the *reason* for the attorney oversight must be considered in determining whether the overall circumstances constitute extraordinary cause. The appellate court vacated the trial court's ruling and remanded with directions to weigh the totality of the circumstances to determine whether there was extraordinary cause under Section 29-26-121(b) to excuse the noncompliance with Section 29-26-121(a). *Hawkins*, 2012 WL 3007680, at \*7.

On remand, the trial court permitted the parties to conduct additional discovery. It also permitted the parties to submit additional exhibits and brief the issue.

The exhibits obtained during discovery included Mr. O'Neal's orders from the Army. It also included several motions Mr. O'Neal filed in other unrelated matters that contained the following statement: "On the afternoon of July 9, 2010, [Mr. O'Neal] received a call from the Army notifying him that he is being deployed to Afghanistan. . . . [He] was also notified that he would be placed on active duty military status as of August 5, 2010 and would be deployed out of the county on August 29, 2010."

The trial court considered the record, including Mr. O'Neal's prior testimony and the additional exhibits produced in the discovery on remand. It did not hear any additional testimony.

On June 24, 2013, the trial court entered an order granting the Defendants' motion to dismiss the Plaintiff's complaint. At the outset, the trial court observed that, in September 2010, a HIPAA-compliant authorization was sent to the Defendants. However, this authorization was insufficient because it only authorized Mr. O'Neal's law office to obtain the medical records and did not authorize the Defendants to do so.

The trial court then addressed the question of extraordinary cause to excuse noncompliance with Section 29-26-121(a)(2)(E). Reviewing Mr. O'Neal's testimony at the September 2011 hearing, the trial court noted that Mr. O'Neal "did not get a notice that he was being deployed to Afghanistan until July 9. . . . Mr. O'Neal did not receive orders to go to Afghanistan until three months after the deficient notice letters were sent." The trial court observed that the reason Mr. O'Neal gave at the September 2011 hearing for failing to comply with the statute

was that he "received notice of deployment to Afghanistan as a reservist in the Army, that [he] was 'probably out of the office more that [he] was in the office being trained up for the mission, and [he] was also bringing [his] files together so [he] could actually bring a new lawyer in to – [he] was actually on a search to find a new lawyer to maintain [his] practice while [he] was being deployed.'" After remand from the appellate court, the trial court said, the Plaintiff shifted the argument to include Mr. O'Neal's state of mind upon learning of his upcoming deployment and with the stress of a solo practitioner wrapping up his practice in anticipation of deployment. The trial court stated expressly that it found Mr. O'Neal to be a "very credible witness." Nevertheless, it held: "There has been no expert proof offered as to [Mr. O'Neal's] state of mind. This court would have to assume or infer that a sole practitioner, faced with active duty in the military at some time in the future, would be unable to function effectively as a lawyer." The trial court found that Mr. O'Neal "had ample time before deployment to comply with the statute." Considering the overall circumstances, the trial court held that the Plaintiff had not carried the burden of proving extraordinary cause to excuse the failure to send HIPAA-compliant authorizations to the Defendants with the pre-suit notice.

In short order, the Plaintiff filed a motion to alter or amend the judgment pursuant to Rule 59.04 of the Tennessee Rules of Civil Procedure. The motion argued that the trial court had failed to view the testimony and facts in a light most favorable to the Plaintiff, and that the trial court's ruling in effect penalized Mr. O'Neal for being in the military reserves. The Plaintiff argued that the trial court disregarded facts that showed that Mr. O'Neal was distracted by his preparation for deployment, and that it also ignored Mr. O'Neal's testimony on how his state of mind could have been affected by the upcoming deployment.

In August 2013, the trial court denied the Plaintiff's Rule 59.04 motion to alter or amend. It found that the Plaintiff's motion failed to cite any basis under Rule 59.04. The trial court's order added that it "considered the entirety of the record and the totality of the circumstances presented by the parties on the issue of extraordinary cause, including the testimony of plaintiff's counsel, Mr. O'Neal, in its decision to dismiss the complaint."

From this order the Plaintiff now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Plaintiff presents the following issues:

> Whether the trial court abused its discretion when, while exercising that discretion to determine whether extraordinary cause existed to excuse exact compliance with Tennessee Code Annotated § 29-26-121(a), the court made

findings of fact, and based its decision on facts, that were not supported by, and contrary to, the evidence of record to reach a conclusion that was illogical and unjust.

Whether the totality of the circumstances compel a conclusion that the circumstances that existed at or before March 9, 2010 were sufficiently unusual and extraordinary as to constitute "extraordinary cause" within the meaning of T.C.A. §§ 29-26-121(b) and 122.

(Capitalization omitted).

Overall, this appeal involves the grant of a motion to dismiss, subject to a *de novo* review with no presumption of correctness. ***Webb v. Nashville Area Habitat for Humanity, Inc.*** 346 S.W.3d 422, 426 (Tenn. 2011); ***Union Carbide Corp. v. Huddleston****,* 854 S.W.2d 87, 91 (Tenn. 1993); ***Vaughn v. Mountain States Health Alliance***, No. E2012-01042-COA-R3-CV, 2013 WL 817032, at *3 (Tenn. Ct. App. Mar. 5, 2013).

However, the issues raised in this appeal center on the trial court's holding that the Plaintiff did not show "extraordinary cause" for the failure to comply with the statutory requirement. The statute at issue states: "The court has discretion to excuse compliance with this section only for extraordinary cause shown." Tenn. Code Ann. § 29-26-121(b) (2012). Thus, pursuant to this statutory language, we review the trial court's holding under an abuse of discretion standard. ***Myers v. AMISUB (SFH), Inc.***, 382 S.W.3d 300, 308 (Tenn. 2012). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105 (Tenn. 2011) (citing ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***see also Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs.***, Inc., 418 S.W.3d 547, 553-54 (Tenn. 2013).

## ANALYSIS

The statute at issue in this appeal, Tennessee Code Annotated § 29-26-121(a)(2)(E), states in relevant part:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

(2) The notice shall include:

(A) The full name and date of birth of the patient whose treatment is at issue;

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C) The name and address of the attorney sending the notice, if applicable;

(D) A list of the name and address of all providers being sent a notice; and

*(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.*

Tenn. Code Ann. § 29-26-121(a)(1)-(2) (emphasis added). Thus, the statute mandates that the pre-suit notice for a health care liability lawsuit include a HIPAA-compliant medical authorization that will permit the defendant health care provider to obtain the plaintiff's medical records.[2] On appeal, the Plaintiff does not dispute the trial court's finding that she did not comply with this statutory requirement.

This statute also provides that a trial court "has discretion to excuse compliance with [Section 29-26-121(a)] only for extraordinary cause shown." Tenn. Code Ann. § 29-26-121(b); *Stevens*, 418 S.W.3d at 556. The determinative issue in this appeal is whether the trial court abused its discretion in holding that the reason given for the Plaintiff's noncompliance did not amount to "extraordinary cause." *Myers*, 382 S.W.3d at 308.

On appeal, the Plaintiff rightly focuses on the events in March 2010, when Mr. O'Neal's office sent the ill-fated pre-suit notice. The Plaintiff argues that Mr. O'Neal testified that he received notice in February 2010 that he would be deployed to Afghanistan instead of Iraq, and that in March 2010 he underwent military training. The Plaintiff asserts that the trial court ignored this testimony. Despite the fact that the trial court expressly found Mr. O'Neal

---

[2]The Tennessee Supreme Court has explained that Subsection (a)(2)(E) "serve[s] an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling . . . early access to a plaintiff's medical records." *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 554 (Tenn. 2013). Absent the authorization referenced in subsection (a)(2)(E), HIPAA prohibits a medical provider from using or disclosing a plaintiff's medical records. *See* 45 C.F.R. § 164.508(a)(1) ("[A] covered entity may not use or disclose protected health information without an authorization that is valid under this section."); *Stevens*, 418 S.W.3d at 555. Thus, the authorization is "a threshold requirement of the statute" and the plaintiff cannot satisfy Section 29-26-121(a)(2)(E) by simply notifying a defendant that a health care liability claim may be forthcoming. *Stevens*, 418 S.W.3d at 555.

to be a credible witness, the Plaintiff contends, the trial court "took the position that there had been no military training or other distraction after February 14, 2010, leaving ample free time between that date and March 9, 2010, to prepare and send out the mandated HIPAA compliant authorization." The Plaintiff asserts that evidence preponderates in favor of a factual finding that Mr. O'Neal received actual notice in February 2010 that he was going to be deployed to Afghanistan, and that the trial court's contrary finding – that he received this information in July 2010, well after the pre-suit notice was filed – is incorrect and not entitled to a presumption of correctness.

The Plaintiff compares Mr. O'Neal's circumstances to the examples of possible "extraordinary cause" listed in *Myers*, such as unexpected loss of the plaintiff's expert. *See Myers*, 382 S.W.3d at 311. The Plaintiff argues eloquently:

> How much more concerned would an attorney be to learn that he, himself, was going to be lost to his clients? When an attorney such as Mr. O'Neal suddenly received orders that he was . . . going to be sent, as part of a military operation, to a war zone, the question then arose: who will represent his clients? Where U.S. military personnel are dying in Afghanistan, how could an attorney, who is also a U.S. military reservist, not have had his state of mind commandeered by anxious, feverish thoughts as to who will take over his law practice, who will protect the interests of the clients who trusted him to protect them, thereby preventing him from being as "sharp" as he would be under ordinary circumstances? If loss of a key witness would cause an attorney concern, how much [more so], then, would the loss of the attorney himself cause concern?

The Plaintiff insists that the totality of the circumstances on March 9, 2010, when the pre-suit notice was filed, constitute extraordinary cause so as to excuse noncompliance. For the trial court to hold otherwise, the Plaintiff maintains, was an abuse of discretion and should be reversed.

In a health care liability action, the plaintiff bears the burden of proving extraordinary cause for a failure to comply with the statutory requirements of Section 29-26-121(a). *Myers*, 382 S.W.3d at 307. The statute does not define the term "extraordinary cause." In applying the term, courts have relied on the plain and ordinary meaning of the word "extraordinary" as "going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." *Id*. at 310-11(citing *Webster's New World Dictionary of the American Language*, 516 (1966); *State v. Vikre*, 356 S.E.2d 802, 804 (N.C. 1987)). As pointed out by the Plaintiff in this appeal, legal scholars have suggested that circumstances constituting "extraordinary cause" might include "illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing

became necessary." *See Myers*, 382 S.W.3d at 311 (citing John A. Day, *Med Mal Makeover 2009 Act Improves on '08; The New New Medical Malpractice Notice and Certificate of Good Faith Statutes,* Tenn. B.J. July 2009, at 17).

As noted above, the trial court's decision to excuse a plaintiff's noncompliance with Tennessee Code Annotated § 29-26-121(a)(2)(E) is reviewed under an abuse of discretion standard. *Myers*, 382 S.W.3d at 308. "A court abuses its discretion when it applies an incorrect legal standard, its decision is illogical or unreasonable, its decision is based on a clearly erroneous assessment of the evidence, or the decision uses reasoning that works an injustice on the complaining party." *Stevens*, 418 S.W.3d at 553-54 (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Konvalinka v. Chattanooga Hamilton Cnty. Hosp. Auth*., 249 S.W.3d 346, 358 (Tenn. 2008)). Under the abuse of discretion standard, the appellate court is not permitted to substitute its own judgment for that of the trial court; the trial court's decision "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). We have emphasized that a plaintiff who seeks to show an abuse of discretion carries a "heavy burden" indeed:

> A party seeking to have a lower court's holding overturned on the basis of abuse of discretion undertakes a heavy burden. The abuse of discretion standard is intended to constrain appellate review and implies "less intense appellate review and, therefore, less likelihood of reversal.". . . . The fact that a decision is discretionary with a trial court necessarily implies that the trial court has a choice of alternatives among a range of acceptable ones; the reviewing court's job is to determine whether the trial court's decision is within the range of acceptable alternatives, given the applicable legal principles and the evidence in the case.

*State of Tenn. ex rel. Jones v. Looper,* 86 S.W.3d 189, 193-94 (Tenn. Ct. App. 2000) (citations omitted).

We do not disagree with the assertion that, where an attorney receives notice that he will be deployed to Afghanistan shortly before he must file the required pre-suit notice and the attorney is anxious and concerned about the upcoming deployment, the plaintiff may be able to establish "extraordinary circumstances" within the meaning of the statute. Unfortunately, in this case, the evidence in the record lacks the force and clarity of the Plaintiff's impassioned argument. As discussed below, the evidence supports only fragments of the facts on which the Plaintiff relies in this appeal.

The Plaintiff contends the trial court disregarded Mr. O'Neal's testimony that in February 2010, when the initial notice of deployment to Iraq was rescinded and he received remission, he also learned that he would be deployed to Afghanistan instead of Iraq. However, the record also includes evidence from Mr. O'Neal that could reasonably be viewed as inconsistent with this assertion. In pleadings filed by Mr. O'Neal in other matters, he stated that on "the afternoon of July 9, 2010," he "received a call from the Army notifying him that he is being deployed to Afghanistan."

The Plaintiff suggests on appeal that his testimony and his statements in the pleadings can be harmonized by finding that Mr. O'Neal received informal information of deployment to Afghanistan in February 2010 and received official word of it in July 2010. This explanation, however, is not given by Mr. O'Neal in his testimony at the September 8, 2011 hearing. Moreover, in his testimony, Mr. O'Neal does not even clearly state that he learned in February 2010 that he was going to be deployed to Afghanistan. In his testimony, Mr. O'Neal stated: "In February, I got a remission notification. Remission means that the Army came back and said guess what, you don't have to go to Iraq, but we've got another place you might like even better. So they decided they were going to send me to Afghanistan." Under these circumstances, we cannot hold that the evidence in the record preponderates against the trial court's finding that Mr. O'Neal learned of his deployment to Afghanistan in July 2010, well after the pre-suit notices were sent.

Further, in her argument on appeal, the Plaintiff relies on Mr. O'Neal's frame of mind when he found out that he would be deployed to Afghanistan. Once again, the evidence in the record does not convey the dread and concern for his personal safety that the Plaintiff contends affected Mr. O'Neal's ability to attend to detail in the filing of the pre-suit notices in this case. In his testimony, Mr. O'Neal said only that he was "probably out of the office more than I was in the office being trained up for the mission," expressed bewilderment at how the omission in the pre-suit notices could have occurred, said he did not "understand how this could be possible but for my military situation," and indicated skepticism about whether the required authorizations were in fact omitted from the pre-suit notices. The record contains *no* evidence, testimonial or otherwise, on the effect the news of deployment may have had on Mr. O'Neal's mental or emotional state.[3] Given this hole in the evidence, the trial court stated that it was unwilling "to assume or infer that a sole practitioner, faced

_____

[3] In addressing this point, the trial court commented that "no expert proof [was] offered as to [O'Neal's] state of mind." We construe this only as an observation by the trial court on the evidence in the record, and not as a holding that expert proof on Mr. O'Neal's state of mind would have been required to establish extraordinary cause. We likewise do not hold that expert proof on the attorney's mental or emotional state is required to establish extraordinary cause.

with active duty in the military at some time in the future, would be unable to function effectively as a lawyer."

The Plaintiff maintains that the trial court failed to consider the totality of the circumstances Mr. O'Neal faced in March 2010. We must respectfully disagree. In its ruling, the trial court referred to Mr. O'Neal's testimony on his absence from the office for training and his search for an attorney to take over his cases. The order denying the Plaintiff's motion to alter or amend states that the trial court "considered the entirety of the record and the totality of the circumstances presented by the parties on the issue of extraordinary cause, *including the testimony of plaintiff's counsel, Mr. O'Neal*, in its decision to dismiss the complaint." (Emphasis added.)

After carefully reviewing the evidence and considering the record as a whole, we cannot conclude the trial court abused its discretion in holding that the Plaintiff did not establish extraordinary cause that would excuse noncompliance with the statutory requirements. Accordingly, we must affirm the trial court's grant of the Defendants' motion to dismiss. This holding pretermits all other issues presented on appeal.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are assessed against Plaintiff/Appellant Deborah Mason Hawkins and her surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE